UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division
Case Number: 11-60169-CR-MARTINEZ-MCALILEY

UNITED STATES OF AMERICA,

vs.

TAVORIS HALL,
　　　　Defendant.
_____/

## ORDER ADOPTING MAGISTRATE JUDGE MCALILEY'S REPORT AND RECOMMENDATION

THE MATTER was referred to the Honorable Chris McAliley, United States Magistrate Judge for a Report and Recommendation on Defendant's Motion to Suppress (D.E. No. 29). The Magistrate Judge filed a Report and Recommendation (D.E. No. 29), recommending that Defendant's motion to suppress be denied. The Court has reviewed the entire file and record and has reviewed Defendant's objections (D.E. No. 30) to Magistrate Judge McAliley's Report and Recommendation *de novo*. After careful consideration and for the reasons set forth below, the Court adopts and affirms Magistrate Judge McAliley's Report and Recommendation.

Defendant Tavoris Hall ("Defendant" or "Mr. Hall") moved to suppress the gun and the ammunition found after his warrantless arrest in his home, which he argues was in violation of the Fourth Amendment. Magistrate Judge McAliley recommended that Defendant's motion to dismiss be denied and issued her ruling on the record in open court after holding an evidentiary hearing. She stated the following as her findings of fact.

> So, I've heard the testimony of three officers of the Broward Sheriff's Department. Detective Mellies, Detective Gorman and Officer Small. Their testimony was clear and direct, and without meaningful contradictions or inconsistencies. And based on the content of their testimony and their demeanor, I found them credible.

On January 27 of 2011, Detective Mellies developed probable cause that Mr. Hall had stolen a check that was made out to his grandmother. Detective Mellies met with the complaining witness, who was Mr. Hall's cousin, and took a sworn statement from her, and saw a copy of the check that had been endorsed by Mr. Hall. Thus, at that point, Detective Mellies could have asked a state court judge to issue an arrest warrant for Mr. Hall.

Detective Gorman followed a standard procedure. He created a flier with Mr. Hall's photo and identifying information, and information about the alleged crime, and distributed the flier to other officers so that they might try to locate Mr. Hall.

Detectives Gorman - - Detective Gorman's intent was to have Mr. Hall located and arrested. If, after a few weeks, he could not find Mr. Hall, he testified that he would have put together the paperwork needed by the state attorney office to apply for an arrest warrant.

As he put it, however, this process takes longer.

Detective Mellies identified Mr. Hall's apparent residence at the Driftwood apartment complex in Lauderhill, Broward County, and a description of the car, a tan or gold Taurus, that he thought Mr. Hall drove. Detective Mellies also pulled Mr. Hall's lengthy criminal history, including arrests for resisting with violence, battery on a police officer and various narcotics charges.

Detective Mellies shared all this information with Detective Gorman - - excuse me, I made a mistake earlier. Let me just correct this. When I said that Detective Gorman followed standard procedure. I should have said Detective Mellies. He was the officer who developed the probable cause and who prepared the flier and who made the decision to not seek an arrest warrant, but rather to try to have Mr. Hall arrested first, without a warrant. That was all Detective Mellies.

But, on February 24 of 2011, Detective Mellies shared the information he had gathered with Detective Gorman, and asked Detective Gorman to try to located Mr. Hall. On that date, Detective Gorman went to the Driftwood apartment complex and saw what he thought was Mr. Hall's car, and decided to go up to Mr. Hall's apartment to see if he was there and to try to talk to him. Because of Mr. Hall's criminal history and information that the detective had that the Driftwood complex was a dangerous place, he called for back-up.

Officer Small and Detective Lampert arrived and met him downstairs, and together they walked up to Hall's second floor apartment unit. Detective Gorman stood at the door. The other two officers stood behind him. All three officers wore clothing that clearly identified themselves as law enforcement. Detective Gorman covered the peephole, knocked on the door for at least a minute, but did not announce himself, or state that he was the police.

Mr. Hall opened the door.

Detective Gorman stated his name. He had recognized Mr. Hall from the photo, and called him by name, and began to explain that the officers had probable cause to arrest Mr. Hall, and to ask that he go to the police station with the officers.

Mr. Hall's face had a look of panic. He jerked to his left, away from the open

-2-

door, and thrust a hand in his left pocket. Detective Gorman yelled "show me your hands," which Mr. Hall did not do. Detective Gorman said that he feared for his safety, therefore, he reached into the apartment, grabbed Mr. Hall, came down on top of him, both of them on the ground. Officer Small also stepped in the apartment, and also grabbed Mr. Hall, and together they took Mr. Hall into custody. Thus, Mr. Hall was arrested in his home without an arrest warrant.

Detective Gorman searched Mr. Hall, and found a loaded .380 revolver in his left pocket. The officers then did a sweep of the apartment and looked in places where other persons might hide, but not in smaller spaces such as drawers.

In the back room, on top of a table, they saw a box of .380 ammunition next to Mr. Hall's driver's license. They seated Mr. Hall in a chair, and called Detective Mellies to report his arrest, and the discovery of the gun and ammunition. Detective Mellies came to the apartment briefly. Uniformed officers then transported Mr. Hall to the police station.

At the police station, Detective Mellies read Mr. Hall his Miranda rights, and Mr. Hall signed a waiver. Detectives Mellies, Gorman and a Detective Goode all questioned Mr. Hall, which was video and audio taped. Mr. Hall admitted that he took the check, although he offered an explanation. He initially denied possession of the gun, but later admitted it.

In particular, he said that when he walked to the door and he looked into the peephole and saw that it was covered, he opened the door, but did so with a gun in his hand. When he saw the police, he said that he tried to put the gun back in his pocket, that was why he was moving away from the door. And he said that he had hoped to hide it under a couch.

Detective Gorman testified that had Mr. Hall not answered the door - - or excuse me, had Mr. Hall answered the door, but without any threatening behavior, and had he refused to go to the police station, that Detective Gorman would have secured the apartment, and would have called in the information needed for an arrest warrant. That that was his alternative plan.

(D.E. No. 28, Transcript at 4-8). Defendant has not objected to Magistrate Judge McAliley's findings of fact, and the Court finds that they are supported by the record. *See* (D.E. No. 32). Accordingly, this Court adopts Magistrate Judge McAliley's findings of fact.

In her conclusions of law, Magistrate Judge McAliley found that although the Fourth Amendment requires that searches and seizures in a home be conducted after issuance of a warrant that is supported by probable cause, there are certain exceptions to this rule and this case falls under the exigent circumstances exception to the Fourth Amendment. Specifically, Judge

McAliley found that the entry into Defendant's home was justified by the threat to the safety of the officers or others. She also found that the analysis in the Supreme Court's recent decision *Kentucky v. King*, 131 S.C. 1849 (2011) is controlling.

Defendant has made a number of objections to Magistrate Judge McAliley's conclusions of law. These objections, however, fall into the same two categories of arguments that Defendant raised in arguing his motion to suppress. Specifically, Defendant first argues that the police's conduct before they approached his home was unreasonable in that the police could have and should have obtained a warrant for his arrest. *See* (D.E. No. 30, Objections at ¶¶ 1, 4). Next, Defendant argues that the police's conduct created the exigency, and thus, the exigent circumstances exception cannot apply. *Id.* at ¶¶ 2, 3, 5, 6. Magistrate Judge McAliley already thoroughly addressed these arguments on the record, and after careful consideration, the Court agrees with her analysis. *See* (D.E. No. 28, Transcript at 8-20).

First, the Court agrees that the police's failure to obtain a warrant in this case even though they could have done so does not violate the Fourth Amendment. As the Supreme Court stated in *King*, "[f]aulting the police for failing to apply for a search warrant at the earliest possible time after obtaining probable cause imposes a duty that is nowhere to be found in the Constitution." 131 S.C. at 1861. The *King* Court also stated that requiring a search warrant whenever the police have probable cause "unjustifiably interferes with legitimate law enforcement strategies" because "[t]here are many entirely proper reasons why police may not seek a warrant but instead knock on the door and seek either to speak with an occupant or to obtain consent to search." *Id.* One of the reasons the court lists is that "the police may want to ask an occupant of the premises for consent to search because doing so is simpler, faster, and less burdensome than applying for a

warrant." *Id*. This is analogous to this situation where the police believed it was simpler, faster and less burdensome to go to Defendant's home and ask him to come down to the station with them.[1]

Finally, the Court also agrees that the police's conduct in this case did not create the exigency. Defendant argues that when the police covered the peephole as they knocked on Defendant's door, they created the exigent circumstances because they made it more likely that Defendant would approach the door armed based on a fear that robbers were at the door. As Judge McAliley noted, this Court is also not convinced that merely covering the peephole makes it more likely that Defendant would be armed in this situation. Furthermore, even if it did, Defendant's argument is again foreclosed by *King*.

The police may rely on the exigent circumstances exception where "the conduct of the police preceding the exigency is reasonable." *Id*. at 1857. The *King* Court state that "where . . . the police did not create the exigency by engaging or threatening to engage in conduct that violates the Fourth Amendment, warrantless entry . . . [is] allowed." *Id*. The Court specifically rejected a test that examines whether it was reasonably foreseeable that the police's conduct would create exigent circumstances. The *King* Court stated that a "reasonable foreseeablility test would create unacceptable and unwarranted difficulties for law enforcement officer who must make quick decisions in the field, as well as for judges who would be required to determine after the fact whether . . . [the exigent circumstance] was reasonably foreseeable based on what the

---

[1] The Court notes that it also agrees with Magistrate Judge McAliley's conclusion that *United States v. Coles*, 437 F. 3d 361 (3d Cir. 2006) has been overruled by *King* to the extent that it held that it was unreasonable for the officers not to seek a warrant and to the extent that it found that the officers created the exigency in violation of the Fourth Amendment by using a subterfuge.

officers knew at the time." *Id.* at 1860. Here, covering the peephole was not an action that violated the Fourth Amendment nor is there any evidence that the police threatened to violate the Fourth Amendment.[2] Accordingly, the Court denies Defendant's motion to suppress. Therefore, it is hereby:

**ADJUDGED** that United States Magistrate Judge McAliley's Report and Recommendation **(D.E. No. 29)** is **AFFIRMED** and **ADOPTED**. Accordingly, it is

**ADJUDGED** that

Defendant's Motion to Suppress (D.E. No. 18) is **DENIED**.

DONE AND ORDERED in Chambers at Miami, Florida, this 16 day of November, 2011.

_____
JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
Magistrate Judge McAliley
All Counsel of Record

---

[2] As discussed above, the court disagrees with Defendant's contention that not obtaining a warrant in this situation violated the Fourth Amendment.